USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: ___9/30/22___

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **AARON A. SINGLETON,** | |
| **Plaintiff,** | **20-CV-8570 (ALC)** |
| -against- | |
| | **OPINION & ORDER** |
| **CITY OF NEW YORK,** | |
| **Defendant.** | |

**ANDREW L. CARTER, JR., United States District Judge:**

*Pro se* Plaintiff Aaron Singleton brings this suit under 28 U.S.C. § 1983 against the City of New York ("City"), Cynthia Brann, Office of the Mayor, and New York State Governor, alleging violations of his federal and state constitutional rights while in pre-trial custody at Rikers Island. Defendants now move to dismiss the Complaint. ECF No. 20. Plaintiff has also moved for the appointment of pro bono counsel. ECF No. 30. For the reasons that follow, the Court GRANTS the motion to dismiss. However, Plaintiff is granted permission to amend his complaint in order to address the deficiencies raised in this opinion. The Court denies the motion for pro bono counsel.

## BACKGROUND

### I.       Facts

When determining whether to dismiss a case, the court accepts as true all well-pleaded factual allegations in the Complaint and draws all reasonable inferences in the plaintiff's favor. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). Furthermore, "[a] complaint is deemed to include any written instrument attached to it as an exhibit." *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) (citations omitted); Fed. R. Civ. P. 10(c). Pursuant to that standard, this

1

recitation of facts is based on Plaintiff's complaint and the attached "Notice of Intention to File Claim" form and "Notice of Search and Search for Contraband" form. ECF No. 2 ("Compl.").

Plaintiff arrived at Rikers Island on or about January 31, 2019. Compl. at 4. While incarcerated, he was subject to multiple unconstitutional conditions of confinement. Specifically, Plaintiff alleges that "on multiple occasions," corrections officers "utilized chemical agents" contrary to Department of Corrections ("DOC") Directive 4510-R-H, which authorizes corrections officers to use their chemical agents for two-to-three seconds. *Id*. at 6. He alleges that he was "forced to be inflicted with oleoresin capsicum," also known as pepper spray. *Id*. Further, Plaintiff alleges that on January 26, 2020, a correction officer "deployed her chemical agent in an unauthorized and unprofessional manner" in the housing area. *Id*. at 10, 14. He claims that he was exposed to pepper spray, and that the facility "failed to provide adequate ventilation . . . in the contaminated area." *Id*. at 10. The spraying caused "severe burning eyes, severe burning skin irritation, vomiting, difficulty breathing (asthma attack) [, and] severe headache." *Id*. at 11. He alleged that the incident occurred at 9:00 am and medical attention was not provided until approximately 2:00 p.m. *Id*. at 10. Plaintiff also alleges that the facility staff "cut off phones to prevent outside correspondence." *Id*.

Additionally, Plaintiff alleges that he was "forced to sleep on painfully thin yoga mats causing severe bodily injury" and "forced to eat foods not fit for animals." *Id.* at 4. He stated that "upon information and belief, many of the items arrive at Riker's Island in packaging labeled 'not fit for human consumption.'" *Id*. He also alleges that the facility was "unsanitary" and that he was "subjected to multiple insects, rats, roaches, [and] water bugs." *Id*. Relatedly, he alleges that the

2

transportation to and from court is "dirty and unsanitary" and covered "with urine and defecation." *Id*. at 7.

Plaintiff alleges he experienced a "severe block of communication with the individuals and organizations that could properly assist" in preparing his defense. *Id*. at 4–5. Further, his phone calls were recorded and monitored, with recordings provided to the District Attorney's Office. *Id*. at 5. He also alleges that he was "housed under constant video recordings." *Id*. at 5.

Plaintiff alleges that he was "inflicted with consistent and continuous strip searches," undergoing a strip search on the way to and from each court date in addition to "random" strip searches" carried out by a "Special Search Team," during which his "personal papers" including legal documents, "are flipped." *Id*. at 5–6.

With respect to COVID-19 conditions, he alleges that inmates were not provided with masks for the "4 weeks after . . . New York City was shut down," he was exposed to multiple inmates with "severe [COVID-19] symptoms," and that the facility did not enforce social distancing. *Id*. at 7. He also alleges denial of "adequate health care." *Id*. at 7. Plaintiff alleges that he has been transported without proper ventilation, while "rear handcuffed," with "no social distancing on the bus," and with "detainees from the streets which was clearly a COVID 19 threat." *Id*. Also, he alleges a lack of "proper hygiene services," at the time he initiated this action. *Id*. at 8. Namely, in Fall 2020, there was still no access to a barbershop, nail clippers, or the law library, and in-person visits were prohibited. *Id*.

In Plaintiff's opposition to Defendant's motion, Plaintiff added that he sustained an injury "to [his] shoulder from being rear cuffed" and that is Plaintiff is at "high risk for COVID-19"

because he has asthma. ECF No. 23 at 6, 9.[1] He also alleged that "there was no sick call," and that sick call "was in 'intake' whenever they provided us the service." *Id*. at 9. Further, he supplemented his claim regarding the release of his phone calls to the District Attorney, stating that both his "personal and attorney" calls were released despite appearing on the "do not record list." *Id*. at 7.

## II.    Procedural History

Plaintiff initiated this action on October 14, 2020. In his complaint, he alleges he suffered mental torture, extended physical torture, financial hardship including bankruptcy, damaged family relationships, and emotional damages. Compl. at 5. As relief, he seeks 700 million dollars in damages, and injunctive relief to "enforce human living conditions in all New York City Corrections facilit[ies]," enforce the due process rights of Plaintiff and all detainees, prohibit DOC from violating state and federal constitutional rights, and to enjoin the "mayor to enforce his commissioners to perform the[ir] duties." *Id*. He also seeks release "from the control, custody and care of the government" and a "restraining order and order of protection against the government to enforce social distancing in the Department of Corrections" and to enforce the Fourth Amendment of the United States Constitution and the Article 1, Section 12 of the New York State Constitution. *Id*. at 5–6. In response to Defendants' letter motion requesting a pre-motion conference in anticipation of the present motion to dismiss, Plaintiff also alleged that he is subject to "status of peonage" and "involuntary servitude and slavery" in violation of the Thirteenth Amendment and criminal law. ECF No. 15 at 8.

---

[1] "A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion." *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013).

4

On December 1, 2020, this Court issued an order of service, which dismissed the New York City Department of Correction, Mayor Bill de Blasio, Governor Andrew Cuomo, and the City of New York Corporation Counsel, and added the City of New York as a defendant. ECF No. 6.

## STANDARD OF REVIEW

Rule 12(b)(6) allows the court to dismiss a claim if a party fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss, the court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). However, the court need not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Claims should be dismissed when a plaintiff has not pled enough facts that "plausibly give rise to an entitlement to relief." *Id.* at 679. A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. While not akin to a "probability requirement," the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Accordingly, where a plaintiff alleges facts that are "merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 557 (2007)).

Considering this standard, "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal citations and

quotation marks omitted). In particular, "the pleadings of a *pro se* plaintiff must be read liberally and should be interpreted to raise the strongest arguments that they suggest." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (internal citations and quotation marks omitted). "Generally[,] a district court should not dismiss a *pro se* complaint without granting the plaintiff leave to amend . . . ." *Tylicki v. Schwartz*, 401 F. App'x 603, at *2 (2d Cir. 2010).

## DISCUSSION

Construing his claims broadly, Plaintiff alleges violations of his First Amendment right to access the courts, his Fourth Amendment right be free from unlawful searches of person and property, his Fifth and Fourteenth Amendment due process and equal protection rights, the Eighth Amendment's prohibition against cruel and unusual punishment, and the Thirteenth Amendment's prohibition against slavery.

Plaintiff brings his claims pursuant to 42 U.S.C. § 1983. "To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997).

## I.    Dismissal of Defendants Cynthia Brann," "Office of the Mayor," and "New York State Governor"

As a preliminary matter, for the reasons stated in the December 1, 2020 Order of Service, the Court dismisses all Defendants who remain on the docket apart from Defendant City of New York. *See* ECF No. 6. Thus, just as that Order dismissed the New York City Department of Correction, Mayor Bill de Blasio, Governor Andrew Cuomo, and the City of New York

Corporation Counsel, the Court now makes clear that "Cynthia Brann," "Office of the Mayor," and "New York State Governor" are dismissed. Thus, the Court only considers Plaintiff's claims as against Defendant City of New York.

## II.   Thirteenth Amendment

To the extent Plaintiff alleges a violation of the Thirteenth Amendment, he fails to state a claim. The Thirteenth Amendment to the United States Constitution provides that "[n]either slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction." "Involuntary servitude" is defined as "a condition of servitude in which the victim is forced to work for the defendant by the use or threat of physical restraint or physical injury, or by the use or threat of coercion through law or the legal process." *McGarry v. Pallito*, 687 F.3d 505, 511 (2d Cir. 2012) (quoting *United States v. Kozminski*, 487 U.S. 931, 952 (1988)). Plaintiff has not pleaded any facts to support such a claim. Indeed, he has made no allegations that he was forced to work. Accordingly, the Court dismisses this claim.

## III.   Conditions of Confinement

As Plaintiff was a pretrial detainee, and not a convicted prisoner, his conditions of confinement claims fall under the Fourteenth Amendment's Due Process Clause rather than the Cruel and Unusual Punishments Clause of the Eighth Amendment. *See Darnell v. Pineiro,* 849 F.3d 17, 29 (2d Cir. 2017). Further, the Court rejects any alleged violation of the Equal Protection Clause of the Fourteenth Amendment. "To establish any theory of an Equal Protection violation, a plaintiff must demonstrate that he is treated differently than others who are similarly situated."

7

*Gil-Cabrera v. Dep't of Corr.*, No. 20-CV-9493, 2021 WL 5282620, at *3 (S.D.N.Y. Sept. 27, 2021), *report and recommendation adopted sub nom. Gil-Cabrera v. City of New York*, 2021 WL 5910055 (S.D.N.Y. Dec. 14, 2021) (internal quotation marks and citations omitted). Plaintiff does not allege that he was treated differently than other inmates, and to the extent he argues that inmates as a class were treated differently than those not in custody, "inmates are not, by virtue of being inmates, members of a protected class." *Id.* (internal quotation marks and citations omitted).

Plaintiff must satisfy both an "objective prong"— demonstrating that the "challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process"—and a "subjective prong"—demonstrating that the "officer acted with at least deliberate indifference to the challenged conditions." *Darnell,* 849 F.3d at 29.

To prove the objective prong, the detainee "must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." *Id.* at 30 (internal quotation marks and citations omitted). When a detainee alleges multiple conditions of confinement, courts may aggregate the effect of all of them "only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (internal quotation marks and citations omitted). The condition "must be measured by its severity and duration, not the resulting injury," but there are no bright line rules regarding severity and duration. *Darnell*, 849 F.3d at 32.

To prove the second prong, the detainee must show that the official "[1] acted intentionally to impose the alleged condition, or [2] recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or

8

should have known, that the condition posed an excessive risk to health or safety." *Id.* at 35. Therefore, the detainee need not show that any defendant was subjectively aware of the harmfulness associated with the conditions.

### a. Mattresses

While "the condition of a prisoner's mattress may be so inadequate as to constitute an unconstitutional deprivation," certain conditions lacking here must be met in order for a plaintiff to succeed on such a claim. *Walker*, 717 F.3d at 127. At the first step, "a plaintiff must allege that [he] had a medical condition requiring a non-standard bed to protect against serious damage to his future health or that the medical condition was itself created by an inadequate bed or mattress." *Jones v. City of New York*, 2020 WL 1644009 at *7, (S.D.N.Y. Apr. 2, 2020) (internal quotation marks and citations omitted). Plaintiff must next allege that "he made his condition known to the prison officials," "requested a non-standard bed to accommodate the condition," and "his request was denied by an official who knew of and disregarded an excessive risk to the plaintiff's health or safety." *Reid v. City of New York*, No. 20-CV-644, 2021 WL 4177756, at *4 (S.D.N.Y. Sept. 14, 2021) (internal quotation marks and citations omitted).

Plaintiff alleges that he was "forced to sleep on painfully thin yoga mats causing severe bodily injury." Compl. at p. 4. He does not allege a pre-existing medical condition nor does he provide any facts explaining a medical condition caused by the mattress beyond his general assertion of a "severe bodily injury." Such conclusory allegations are insufficient to state a claim. *See DelaCruz v. City of New York*, No. 15-CV-3030, 2015 WL 2399346, at *2 (S.D.N.Y. May 19, 2015) (plaintiff did not satisfy the objective element when his complaint did not "indicate how the

prison bedding has caused or exacerbated his claimed injuries"). Therefore, the conditions of confinement claim is dismissed with respect to the mattress allegations.

**b. Food**

Due process requires that pretrial detainees are provided with "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the [detainees] who consume it." *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983) (internal quotation marks and citations omitted). In light of the liberal interpretation courts must afford *pro se* plaintiffs, the Court finds that Plaintiff's assertions that the food was labeled "not fit for human consumption" is sufficient to allege a claim of an objective deprivation. *See Willey v. Kirkpatrick*, 801 F.3d 51, 69 (2d Cir. 2015) (upholding plaintiff's nutritionally inadequate food claim based on allegations that plaintiff's food was "stale" or "rotten").

However, this claim is not sufficiently pleaded to meet the subjective prong. The Complaint does not allege specific facts showing that Defendant was deliberately indifferent to the risk posed by the food. Therefore, this claims also fails.

**c. Unsanitary Conditions of Confinement**

**i. Transportation**

There is no "bright-line durational requirement for a viable unsanitary-conditions claim," rather, the viability of the claim "depends on both the duration and severity of the exposure." *Willey*, 801 F.3d at 68. Unconstitutional conditions of confinement have included "those in which the area in front of a prisoner's cell is filled with human feces, urine, and sewage water, those in which a prisoner's cell is fetid and reeking from the stench of the bodily waste of previous occupants, and those in which a prisoner's cell has urine and feces splattered on the floor."

10

*McFadden v. Noeth*, 827 F. App'x 20, 29 (2d Cir. 2020) (internal quotation marks and citations omitted).

Plaintiff alleges that the buses are "dirty and unsanitary with urine and defecation that's never cleaned." Compl. at 7. He further alleges that he experiences these conditions when transported to court and between facilities, and must "sit and inhale filth for hours . . . with no adequate ventilation." *Id*. Plaintiff has not provided facts about the duration of his exposure to the allegedly unsanitary conditions beyond broadly stating that he was subject to the conditions "for hours," nor has he explained the severity of the conditions. For example, in *Darnell v. Pineiro*, the plaintiffs succeeded in challenging the conditions of confinement when they demonstrated that "[t]heir cells had overflowing toilets, foul odors, and floors caked with urine and feces and littered with vomit, dead roaches, decaying apple cores, old milk cartons, and rotting sandwich." *Howard v. Brown*, No. 15-CV-9930, 2018 WL 3611986, at *5 (S.D.N.Y. July 26, 2018) (quoting *Darnell*, 849 F.3d at 23–26). On the other end of the spectrum, courts have rejected conditions of confinement claims where the plaintiff alleged that he was held for "several hours" in a cell filled with "urine [] and other un-sanitary things," a broken toilet filled with waste, and no ventilation. *Id*. The facts as currently pleaded are closer to the latter type of case than the *Darnell* case. Accordingly, this claim is dismissed.

### ii.  Vermin

"The mere presence of vermin in a detainee's housing area does not constitute a denial of the minimal civilized measure of life's necessities." *Clay v. Lee*, No. 13-CV-7662, 2019 WL 1284290, at *5 (S.D.N.Y. Mar. 20, 2019) (internal quotation marks and citations omitted). To state a claim, Plaintiff must "allege facts supporting the conclusion that the vermin at Rikers Island

posed a serious danger to his health." *Cheatham v. City of New York*, No. 18-CV-2388, 2020 WL 207783, at *4 (E.D.N.Y. Jan. 14, 2020). Here, Plaintiff does not allege any details regarding a health risk he suffered, nor does he allege details beyond stating the presence of "multiple insects, rats, roaches, [and] water bugs." Compl. at 4. Therefore, Plaintiff fails to establish a constitutional violation on the basis of vermin.

Thus, Plaintiff has not alleged sufficient facts to satisfy a claim for unsanitary conditions of confinement.

### d.   Treatment of Symptoms from Chemical Agent Spraying

The Court discusses below Plaintiff's excessive force claim relating to the spraying of the chemical agent. Plaintiff also alleges a claim of deliberate indifference to serious medical needs with respect to the symptoms he suffered due to the spraying on January 26, 2020. The "objective" prong when assessing a claim of deliberate indifference to serious medical needs requires the medical need to be "sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain, exists." *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (internal quotation marks and citations omitted).

The analysis of this claim ends with the objective prong. Courts in this circuit have repeatedly denied deliberate indifference claims involving spraying of chemical agents and symptoms similar in nature to those Plaintiff alleges. This is because "temporary effects of chemical spray are not serious medical needs because they do not rise to the level of producing death, degeneration, or extreme pain." *Holmes v. City of New York*, No. 17-CV-3874, 2018 WL 4211311, at *7 (S.D.N.Y. Sept. 4, 2018) (denying claim because Plaintiff failed to plead a sufficiently serious injury when alleging affliction of "coughing fit and burning sensations on his

skin and eyes" due to chemical spray); *see also Rodriguez v. Cohall*, No. 21-CV-01810, 2022 WL 1228411, at *4 (S.D.N.Y. Apr. 26, 2022) ("Courts in this Circuit have found consistently that plaintiffs who complained of similar injuries arising out of exposure to chemical agents while in custody failed to plead adequately that they suffered sufficiently serious injuries."); *Taylor v. Quayyum*, No. 16-CV-1143, 2021 WL 6065743, at *6 (S.D.N.Y. Dec. 21, 2021) (holding that Plaintiff failed to allege a sufficiently serious injury related to spraying where injuries included "rest[r]icted breathing, caoughing [sic], sneezing, burning of eyes and throat, skin erritation [sic] . . . . [and] mental anguish").

### e. COVID-19 Claims

#### i. Alleged COVID-19 Exposure

The Court construes Plaintiff's COVID-19 exposure claim as a conditions of confinement claim alleging deliberate indifference to serious medical needs. An inmate must prove that the official committed "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs" in order to support a claim of inadequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). There is both an "objective" and a "subjective" prong: the objective prong requires that Plaintiff allege facts establishing that he was "incarcerated under conditions posing a substantial risk of serious harm," and the subjective prong requires that the prison official acted "with a sufficiently culpable state of mind." *Morgan v. Dzurenda*, 956 F.3d 84, 89 (2d Cir. 2020) (internal quotation marks and citations omitted). The prison official is "sufficiently culpable" if "he has knowledge that an inmate faces a substantial risk of serious harm and he disregards that risk by failing to take reasonable measures to abate the harm." *Jones v. Westchester Cnty.*, No. 20-

CV-08542, 2022 WL 1406591, at *3 (S.D.N.Y. May 4, 2022) (internal quotation marks and citations omitted).

"It is undisputed—and, indeed, by now common knowledge—that COVID-19 is a highly dangerous disease that poses a significant risk of severe illness and death," *Gil-Cabrera*, 2021 WL 5282620, at *4 (internal quotation marks and citations omitted), and "correctional officials have an affirmative obligation to protect inmates from infectious disease," *Jolly v. Coughlin*, 76 F.3d 468, 477 (2d Cir. 1996). Despite this, Plaintiff's COVID-19 claims do not plausibly allege unconstitutional conditions of confinement. His conclusory allegations include that DOC did not provide inmates with masks, DOC did not provide adequate healthcare, he was exposed to inmates with "severe [COVID-19] symptoms," social distancing was not enforced, and sick call was eliminated. *See* Compl. at 7–8. Plaintiff does not explain which housing areas were affected by the lack of social distancing rules, how the healthcare was inadequate, whether he himself was denied healthcare, how he was exposed to the inmates with COVID-19 symptoms, or how, if at all, he was affected by DOC's actions.

Plaintiff also alleges that after a court appearance on September 30, 2020, he "was transported back to Rikers Island with detainees from the streets[,] which was clearly a Covid-19 threat," and "there was no social distancing on the bus." Compl. at 7. Plaintiff does not provide sufficient detail to state a claim here; he does not explain the length of the trip, whether the windows were open or closed, or the distance between detainees. Without more, these allegations fail to state a claim upon which relief can be granted. *Iqbal*, 556 U.S. at 678.

### ii.  Legal Visits

Plaintiff alleges that in-person visits were not allowed due to the COVID-19 pandemic.

14

However, Plaintiff again fails to allege sufficient facts to state a claim. He does not identify with whom, if anyone, he was denied a visit. He does not explain whether he received access to telephonic or videoconference visits. He does not state when he was denied in-person visits. Courts have declined to find that jail facilities' decisions to "suspend all legal visits [are] unreasonable in light of the global pandemic and the threat it poses to inmates." *United States v. Brito*, No. 20-CR-63, 2020 WL 2521458, at *6 (S.D.N.Y. May 18, 2020). Absent additional facts, any claim regarding suspension of in-person visits fails.

### f.  Access to Hygiene Services

Plaintiff also alleges that "we don't have proper hygiene on Rikers Island, no barbershop, no nail clippers." Compl. at 8. Similar to his other allegations, this claim cannot stand without additional information. While "the failure to provide prisoners with . . . hygienic materials may rise to the level of a constitutional violation," on its own, lack of access to a barbershop and nail clippers for an undefined period of time does not pass muster. *Walker,* 717 F.3d at 127. "[D]enial of ordinary access to a barber, as a matter of law, fails to amount to the denial of the minimal civilized measure of life's necessities." *Patterson v. Ponte*, No. 16-CV-3156, 2017 WL 1194489, at *5 (S.D.N.Y. Mar. 30, 2017), *report and recommendation adopted*, 2017 WL 1405753 (S.D.N.Y. Apr. 17, 2017). Even if the alleged violations are sufficiently serious to meet the objective prong, Plaintiff has not alleged facts to support an inference that Defendant acted with deliberate indifference. *See Brock v. DeBlasio*, No. 17-CV-5827, 2017 WL 4541389, at *2 (E.D.N.Y. Oct. 10, 2017) ("temporary deprivation of . . . receiving a haircut" did not rise to the level of a constitutional violation as "there [was] no indication that defendants acted with deliberate indifference to plaintiff's health or safety").

15

Thus, the Court dismisses Plaintiff's COVID-19 claims.

For the above reasons, all of Plaintiff's unconstitutional conditions of confinement claims are dismissed.

## IV.  Excessive Force

"When force is purposefully or knowingly used against a pretrial detainee, the detainee must show only that the force was objectively unreasonable." *Campbell v. Hanson*, No. 17-CV-1024, 2019 WL 2717691, at *3 (S.D.N.Y. June 28, 2019) (internal quotation marks and citations omitted). "[O]bjective reasonableness turns on the facts and circumstances of each particular case," and courts may consider "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015) (internal quotation marks and citation omitted).

### a.  Handcuffing

Plaintiff alleges that the practice of rear handcuffing for transportation and court appearances violate his constitutional rights. Compl. at 7. In his opposition, he alleges that he "sustained an injury to [his] shoulder from being rear cuffed." ECF No. 23 at 6. Such claims are generally evaluated as excessive force claims in violation of the plaintiff's due process rights. *See Johnson v. Turnbill*, 715 F. App'x 84, 85 (2d Cir. 2018). When an excessive force claim is based on handcuffing, courts consider evidence that "1) the handcuffs were unreasonably tight; 2) the defendants ignored the plaintiff's pleas that the handcuffs were too tight; and 3) the degree of injury to the wrists." *White v. City of New York*, No. 17-CV-2404, 2019 WL 1428438, *10

16

(S.D.N.Y. March 29, 2019) (internal quotation marks and citations omitted). "The injury requirement is particularly important." *Morocho v. New York City*, No. 13-CV-4585, 2015 WL 4619517, at *8 (S.D.N.Y. July 31, 2015) (internal quotation marks and citations omitted).

Here, Plaintiff has not alleged any facts regarding the tightness of the handcuffs, any pleas made to officers regarding the handcuffs, or the severity or nature of his injury. Rather, he generally states that the handcuffing caused a shoulder injury. Accordingly, his excessive force claim is dismissed for failure to state a claim.

### b.  Chemical Agent Spray

The Court construes Plaintiff's claims regarding the spraying of the chemical agent as an excessive force claim. Plaintiff also here fails to establish that the alleged use of force was objectively unreasonable. Plaintiff states that the correctional officers deployed the chemical agent in an "unauthorized and unprofessional manner" in violation of DOC Directive 4510-R-H, but does not explain how the deployment of the chemical agent was unauthorized. Compl. at 6, 14. He does allege some facts regarding the circumstances of the use of the spray; Plaintiff describes the incident as taking place in the housing unit, but does not provide additional information. Thus, on the facts provided, Plaintiff fails to allege an excessive force claim with respect to the use of the chemical agent.

Therefore, the Court grants Defendant's motion to dismiss as to the excessive force claims.

### V.     Fourth Amendment Claims

Plaintiff alleges that Defendant violated the Fourth Amendment right against unreasonable searches and seizures by conducting (1) strip searches, (2) searches of his property in his cell, (3)

17

monitoring of his phone calls, including sharing phone recordings with the District Attorney, and (4) video surveillance. For the reasons below, these claims fail.

   a. **Strip Searches**

Plaintiff alleges that he was subject to both random strip searches and regular strip searches when going to and from court. "Courts assessing an inmate's claim that officers infringed his or her right to bodily privacy must undertake a two-part inquiry: (1) First, the court must determine whether the [prisoner] has exhibit[ed] an actual, subjective expectation of bodily privacy; and (2) second, the court must determine whether the prison officials had sufficient justification to intrude on [the inmate's] [F]ourth [A]mendment rights." *Harris v. Miller*, 818 F.3d 49, 57 (2d Cir. 2016). Thus, while the right to privacy of inmates is constrained, "the Fourth Amendment still requires all searches conducted within a prison, including strip searches, to be reasonable." *Holland v. City of New York*, 197 F. Supp. 3d 529, 542 (S.D.N.Y. 2016). A strip search violates the Fourth Amendment "if it is unrelated to any legitimate penological goal or if it is designed to intimidate, harass, or punish." *Jean–Laurent v. Wilkerson*, 438 F.Supp.2d 318, 323 (S.D.N.Y. 2006).

However, the mere occurrence of strip searches—including random strip searches— without further allegations of unreasonableness, is not a constitutional violation. Indeed, "courts in this District have uniformly held . . . that [t]he general practice of strip searching a detainee during housing searches and on the way to and from court appearances is not unconstitutional, even if the detainee is accused only of a misdemeanor." *Keaton v. Ponte*, No. 16-CV-3063, 2017 WL 3382314, at *12 (S.D.N.Y. Aug. 4, 2017). Here, Plaintiff fails to allege any facts to challenge the strip search policy. Absent allegations of specific facts demonstrating that Defendant lacked a

sufficient justification for the strip searches, Plaintiff's Fourth Amendment claims regarding strip searches fail.

### b. Property Searches

Plaintiff alleges that his "personal papers" including legal documents were "flipped" during random searches of his cell. Compl. at 6. Inmates are not afforded a reasonable expectation of privacy in their jail cells. *See Hudson v. Palmer*, 468 U.S. 517, 526 (1984) ("[The] Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell. The recognition of privacy rights for prisoners in their individual cells simply cannot be reconciled with the concept of incarceration and the needs and objectives of penal institutions."); *Rodriguez v. McClenning*, 399 F. Supp. 2d 228, 239 (S.D.N.Y. 2005) ("[Plaintiff] had no constitutional right to be free from cell searches of any kind. . . ."). An inmate's "cell and his belongings are thus open to official inspection and search at any time and for any legitimate reason." *United States v. Carrasquillo*, No. 03-CR-952, 2004 WL 102774, at *2 (S.D.N.Y. Jan. 21, 2004). Therefore, the search of Plaintiff's papers does not violate Plaintiff's constitutional rights.

### c. Recording Phone Calls

Plaintiff alleges that his phone calls in jail are recorded, monitored, and provided to the District Attorney. "[T]he Second Circuit has clearly and repeatedly held that jail officials may monitor and record prisoners' and pretrial detainees' phone calls for security purposes after providing sufficient notice." *Reid v. City of New York*, No. 20-CV-9243, 2022 WL 2967359, at *18 (S.D.N.Y. July 27, 2022); *see United States v. Friedman*, 300 F.3d 111, 123 (2d Cir. 2002) (holding that "where a facility provides some notice to inmates that calls may be monitored, the

facility's practice of automatically taping and randomly monitoring telephone calls of inmates in the interest of institutional security is not an unreasonable invasion of the privacy rights of pretrial detainees" (internal quotation marks and citations omitted)). Disclosure of such phone calls for law enforcement purposes has also been repeatedly upheld in this Circuit. *See, e.g.*, *Reid*, 2022 WL 2967359 at \*19 (dismissing Fourth Amendment claim where DOC allegedly released phone calls to the District Attorney). Plaintiff has made no allegations that the allegedly recorded calls were not made for security purposes or that he was not provided with notice that calls may be recorded.

Further, Plaintiff has not alleged facts demonstrating that the alleged recording of his privileged, and non-privileged, calls was conducted pursuant to a municipal policy. As the only remaining Defendant is the City, "plaintiff must show that he suffered the denial of a constitutional right that was caused by an official municipal policy or custom." *Bellamy v. City of New York*, 914 F.3d 727, 756 (2d Cir. 2019). Plaintiff has failed to demonstrate that the recording of phone calls occurred pursuant "a municipal policy or custom." Boilerplate, conclusory allegations of the existence of a policy do not suffice. *See Triano v. Town of Harrison*, 895 F. Supp. 2d 526, 535 (S.D.N.Y. 2012) ("[M]ere allegations of a municipal custom or practice of tolerating official misconduct are insufficient to demonstrate the existence of such a custom unless supported by factual details."); *Paulin v. City of Beacon*, No. 17-CV-5105, 2019 WL 4274211, at \*6 (S.D.N.Y. Sept. 10, 2019) (dismissing *pro se* plaintiff's claims against municipality because his "allegations are precisely the sort of 'boilerplate' assertions that courts find insufficient to establish municipal liability").

Accordingly, the claim regarding the recording of calls is dismissed.

### d.  Video Surveillance

Plaintiff alleges that he is "under constant video" surveillance at the facility with "each and every moment on camera." Compl. at 6. As above, Singleton has failed to allege sufficient facts to support a violation of the Fourth Amendment based on the alleged video recordings. *See Williams v. City of New York*, No. 20-CV-516, 2021 WL 4267736, at *4 (S.D.N.Y. Sept. 20, 2021) (holding that inmate's allegations that cameras zoomed in on him as he was undressing were "generalized and conclusory allegations" and the plaintiff therefore failed to state a plausible claim). Singleton has neither alleged that he had "an actual, subjective expectation of bodily privacy," nor that "prison officials lacked sufficient justification" for the use of the video cameras. *Telesford v. Annucci*, 693 F. App'x 1, 3 (2d Cir. 2017) (internal quotation marks and citations omitted).

Therefore, Plaintiff has failed to state a claim with respect to video surveillance, and his Fourth Amendment claims are dismissed in their entirety.

### VI.  First Amendment Claim

Plaintiff alleges that he was blocked from communicating with entities that could help him prepare his defense and that there was no access to the law library. "To establish a denial of access to courts claim, plaintiff must demonstrate not only that defendants deliberately or maliciously took or w[ere] responsible for actions that hindered plaintiff's efforts to pursue a legal claim, but that the defendant[s]' actions resulted in *actual injury* to the plaintiff such as the dismissal of an otherwise meritorious legal claim." *Stewart v. Richardson*, No. 15-CV-9034, 2019 WL 719638, at *8 (S.D.N.Y. Feb. 20, 2019) (quoting *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003)).

21

First, Plaintiff does not allege any actual injuries. Second, Plaintiff's allegations are too conclusory. Plaintiff also does not explain the nature of the block of communication and the type of individuals and organizations with whom he attempted to communicate. Plaintiff does not state whether he attempted to access the law library. Third, Plaintiff does not allege that Defendant deliberately or maliciously denied him access to the courts.

Thus, Plaintiff's First Amendment claim is dismissed.

## VII.   Municipal Liability

As Plaintiff has failed to allege any underlying constitutional claim, I need not reach the issue of municipal liability pursuant to *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1979). *See Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) ("Because the district court properly found no underlying constitutional violation, its decision not to address the municipal defendants' liability under *Monell* was entirely correct.").

## VIII.   Release from Custody

Plaintiff seeks release "from the control, custody and care of the government." Compl. at 5. The Court construes this as a request for habeas corpus relief under 28 U.S.C. § 2241. "A petition for a writ of habeas corpus under § 2241 is generally considered the proper vehicle for a state pretrial detainee who argues that he is in custody in violation of the Constitution or federal law." *Griffin v. Warden of Otis Bantum Corr. Ctr.*, No. 20-CV-1707, 2020 WL 1158070, at *2 (S.D.N.Y. Mar. 10, 2020) (citing *McDonough v. Smith*, 139 S. Ct. 2149, 2157 n.6 (2019)). Plaintiff must first exhaust his state remedies before seeking this relief in this Court. *See Griffin v. Warden A.M.K.C.*, No. 22-CV-6302, 2022 WL 3045772, at *3 (S.D.N.Y. July 29, 2022) ("Before seeking Section

2241 federal *habeas corpus* relief, a state pretrial detainee must first exhaust his available state-court remedies.").

Plaintiff's opposition includes documents demonstrating that he filed a state court habeas corpus petition that was denied by the New York Supreme Court, Bronx County. *See* ECF No. 23-1, 72–88. He must, however, allege that he has appealed that denial to the higher state courts. *See Griffin*, 2022 WL 3045772, at *3 ("In the pretrial context, such exhaustion includes seeking *habeas corpus* relief in the state courts and, if necessary, appealing all the way up to the New York Court of Appeals, the State of New York's highest court.").

Further, it appears that Plaintiff has been released from jail and is no longer incarcerated. *See* ECF No. 39 (noting change of address). As Plaintiff is no longer in custody, his habeas claim is moot. *See Hasanati v. Lindsay*, No. 07-CV-3945, 2009 WL 1834311, at *1 (E.D.N.Y. June 25, 2009) ("Hasanati's Petition seeks relief from pre-trial detention. Because Petitioner was subsequently released on bail and is no longer incarcerated, the Petition is moot."). "If the petitioner has been released from custody during the pendency of the case, his habeas petition is deemed moot unless he can show a concrete and continuing injury other than the now-ended incarceration, such as a continuing collateral consequence of his prior incarceration or conviction." *Henry v. Murphy*, No. 17-CV-5852, 2018 WL 7291456, at *4 (S.D.N.Y. Oct. 31, 2018), *report and recommendation adopted*, 2019 WL 289865 (S.D.N.Y. Jan. 23, 2019) (internal quotation marks and citations omitted). Where, as here, the plaintiff or petitioner is not challenging a criminal conviction, there is no presumption of collateral consequences. *See id.* (collecting cases). As Plaintiff has "made [no] showing of continuing, collateral consequences as a result of the previous

[incarceration]," the habeas claim is also dismissed as moot. *Id*. (internal quotations and citations omitted).

## IX.    Leave to Amend

"A *pro se* complaint should not [be] dismiss[ed] without [the Court] granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks and citations omitted). Although Plaintiff's complaint is deficient as it is currently presented, since he could plausibly allege claims by including the specific allegations detailed above, he is granted leave to amend his complaint to include any such allegations.

## X.    Pro Bono Counsel

Plaintiff has requested the appointment of *pro bono* counsel. ECF No. 30. The *in forma pauperis* statute provides that the courts "may request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1). Unlike in criminal cases, in civil cases, there is no requirement that courts supply indigent litigants with counsel. *See Hodge v. Police Officers*, 802 F.2d 58, 60 (2d Cir. 1986). Instead, the courts have "broad discretion" when deciding whether to seek pro bono representation for a civil litigant. *Id*. Even if a court does believe that a litigant should have a free lawyer, under the *in forma pauperis* statute, a court has no authority to "appoint" counsel, but instead, may only "request" that an attorney volunteer represent a litigant. *See Mallard v. U.S. Dist. Court for the S. Dist. of Iowa*, 490 U.S. 296, 301–310 (1989). Moreover, courts do not have funds to pay counsel in civil matters. Courts must therefore request the services of *pro bono* counsel sparingly, and with reference to public benefit, in order to preserve the "precious

24

commodity" of volunteer-lawyer time for those litigants whose causes are truly deserving. *Cooper v. A. Sargenti Co., Inc.*, 877 F.2d 170, 172–73 (2d Cir. 1989).

The factors to be considered in ruling on an indigent litigant's request for counsel include the merits of the case, Plaintiff's efforts to obtain a lawyer, and Plaintiff's ability to gather the facts and present the case if unassisted by counsel. *Id.* at 172; *Hodge v. Police Officers*, 802 F.2d 58, 60–62 (2d Cir. 1986). Of these, the merits are "[t]he factor which command[s] the most attention." *Cooper*, 877 F.2d at 172. As the Court has granted Defendant's motion to dismiss and found the current complaint meritless, the motion for *pro bono* counsel is dismissed as moot. If Plaintiff seeks to amend the complaint, and to the extent the request for *pro bono* counsel applies to the amendment, the Court denies the motion for counsel as it relates to preparation of an amended complaint without prejudice to renewal at a later date.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is granted. As district judges should, as a general matter, liberally permit pro se litigants to amend their pleadings" unless "amendment would be futile," and as Plaintiff has yet to amend his complaint, this dismissal is without prejudice. *Terry v. Inc. Vill. Of Patchogue*, 826 F.3d 631, 633 (2d Cir. 2016). If Plaintiff opts to file an amended complaint, he must do so within 30 days of this Opinion. The amended complaint shall address the deficiencies addressed in this opinion, and, as it will replace the current complaint, must include all claims and factual allegations, not only new claims and allegations. Failure to file an amended complaint within 30 days will result in a dismissal with prejudice.

The Clerk of Court is respectfully requested to terminate the motions at ECF No. 20 and 30, and to mail a copy of this Order to *pro se* Plaintiff.

**SO ORDERED.**

**Dated: September 30, 2022**
       **New York, New York**

_____

**ANDREW L. CARTER, JR.**
**United States District Judge**